## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Civil Action No. 3:26-cv-00157

| | |
|---|---|
| Emage Medical, LLC<br><br><br>Plaintiffs,<br><br>v.<br><br><br>Insight Innovation Partners, LLC and<br>Cari Ray<br><br><br>Defendants. | **Defendants' Reply Brief in Support of their Partial Motion to Dismiss Pursuant to Rule 12(b)(6)** |

NOW COME Defendants Insight Innovation Partners, LLC and Cari Ray, by and through the undersigned counsel and submit the following Reply Brief in support of their Partial Motion to Dismiss, which seeks to dismiss Plaintiff's claim for Breach of Contract as it relates to the "Restrictive Covenants" section of the Second Ray ICA and its claim for Unfair and Deceptive Trade Practices.

### Preliminary Matter:
### Exclusion of Allegations not in Plaintiff's Complaint

As a preliminary matter, in deciding a motion to dismiss under Rule 12(b)(6), the Court is limited to the factual allegations actually contained within the four corners of the complaint. *See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (noting that "the 'well-established Four corners Rule' … limits what federal courts may consider when ruling on a Rule 12(b)(6) motion to dismiss). Despite this well-settled limitation, Plaintiff's Opposition introduces factual allegations that do not appear in the Complaint. A plaintiff cannot cure pleading

deficiencies by supplementing its complaint through opposition briefing; the proper vehicle for that would be an amended complaint. *See* Fed. R. Civ. P. 15.

First, the Opposition asserts that "Ms. Ray gave Mr. Wallace documentation showing that what she had told him regarding the Cytopeel was true." (Pl.'s Opp. at 3.) The Complaint, however, alleges only a verbal representation by Ms. Ray. (Compl. ¶ 57).

Second, and more significantly, the Opposition states that "the documentation provided by Ms. Ray was not authentic" (Pl.'s Opp. at 4), which directly contradicts the allegation in the Complaint that the inauthentic documentation was provided by the Chinese Representative and not Ms. Ray. (Compl. ¶ 64).

Third, the Opposition relies on the claim that "Ms. Ray knew all or most of Emage's customers" (Pl.'s Opp. at 6) to support Plaintiff's contention that the broad restrictions in the Second Ray ICA were necessary to protect Emage's legitimate business interest. Nowhere in the Complaint, however, does Emage allege that Ms. Ray knew all or most of Emage's customers. On the contrary, in relation to Ms. Ray's relationships with Emage's customers, the Complaint alleges:

- **¶ 11**: "The Emage Customers were and are located throughout the country."
- **¶ 12**: "Ms. Ray visited the Emage Customers both virtually and in person."
- **¶ 13**: "Some of the Emage Customers that Ms. Ray personally visited were located in North Carolina."

(Compl. at 2.)

These paragraphs from the Complaint establish that Ms. Ray visited customers and that some of those visits were in North Carolina, however paragraph 13's use of the word "some" suggests that Ms. Ray's in-person contact with Emage's customers was not comprehensive. Plaintiff cannot justify the overbreadth of the restrictions in the Second Ray ICA by bringing in

new facts that do not appear in the Complaint.

Fourth and finally, the Opposition characterizes Ms. Ray as having misrepresented "…both the efficacy and the manufacturer of the Cytopeels…" (Pl.'s Opp. at 10.) The Complaint, however, alleges only that Ms. Ray misrepresented the manufacturer of the Cytopeel. (Compl. ¶ 101).

Because the foregoing allegations do not appear on the face of the Complaint, Defendants respectfully request that the Court disregard them and any arguments premised upon them, including Plaintiff's contention that the restrictive covenant's broad geographic scope is warranted by Ms. Ray's customer knowledge.

## Argument

### I. Plaintiff's Opposition Fails to Establish the Enforceability of the Restrictive Covenant at Issue

Plaintiff's Opposition fails to establish the enforceability of the broad restrictions in the Second Ray ICA because (A) Plaintiff relies on allegations outside the Complaint and cannot justify the restrictive covenant's overbroad scope, and (B) Plaintiff cannot salvage a facially invalid covenant based on specific facts of an alleged breach.

### A. Plaintiff's Opposition fails because it relies on facts outside the Complaint and cannot justify the restrictive covenant's overbroad scope

Plaintiff contends that Ms. Ray's roles as salesperson and CEO gave her "intimate knowledge [of] Emage's business operation," and that this knowledge purportedly justifies the NCA's broad prohibition on Ms. Ray's ability to work for a competitor in any capacity. (Pl.'s Opp. at 6.) That argument fails for two independent reasons.

First, Plaintiff improperly relies primarily on an allegation outside the Complaint; the

assertion that "Ms. Ray knew all or most of Emage's customers." (Pl.'s Opp. at 6.) Because this allegation does not appear in the Complaint, it cannot be considered on a motion to dismiss.

Second, even assuming Ms. Ray possessed extensive knowledge of Emage's business, that fact does not justify the sweeping scope of the restrictions. The existence of a legitimate business interest and the permissible scope of a covenant protecting that interest are distinct inquiries. *See Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 316–17, 450 S.E.2d 912, 919–20 (1994) (invalidating covenant that was "much broader than necessary" because it barred the plaintiff from any association with actuarial businesses rather than limiting the restriction to actual customers). Thus, even if Ms. Ray's knowledge of Emage's customers constitutes a protectable interest, it does not justify restricting her from unrelated employment. Noncompete provisions must be narrowly tailored to protect the employer's legitimate business interests (*See Atkore Int'l, Inc. v. Dinkheller*, 2025 NCBC 20, ¶ 32, 2025 NCBC LEXIS 42, at *16). A facially overbroad restriction cannot be justified merely by the extent of the employee's knowledge.

**B. Plaintiff's Opposition fails because a facially overbroad restrictive covenant is invalid regardless of the facts of the alleged breach.**

Plaintiff argues dismissal is inappropriate because Ms. Ray did not actually seek unrelated employment. The enforceability of a restrictive covenant, however, is assessed based on its written terms, not the particular conduct alleged to constitute a breach. *See, e.g. Inland Am. Winston Hotels, Inc. v. Crockett,* 212 N.C. App. 349, 354, 712 S.E.2d 366, 369 (2011). The question before this Court is whether the restrictive covenant is enforceable as written. A restrictive covenant that is overbroad on its face cannot be saved by the fact that the alleged breach happens to fall within a narrower, potentially enforceable application of its terms. Accepting Plaintiff's argument would effectively eliminate the overbreadth doctrine, allowing an otherwise invalid covenant to be

enforced so long as the plaintiff can identify a single application that falls within permissible bounds.

For these reasons, Plaintiff's Opposition fails to establish that the restrictive covenant is enforceable, and therefore dismissal is warranted.

**II.** **<u>Plaintiff's Opposition Fails to Establish that the UDTP Claim is Adequately Plead.</u>**

Plaintiff's reliance on cases recognizing that proof of fraud can support a UDTP claim is misplaced because those cases apply only where a court has already determined that a fraud claim is legally sufficient, not where a defendant simply elects not to challenge it. Additionally, even if that principle applied, it would not cure Plaintiff's failure to plead facts indicating that the alleged conduct occurred "in or affecting commerce," an essential and independent element of a UDTP claim.

**A. Plaintiff's attempt to use its fraud claim to sustain its UDTP claim fails as a matter of law**

Plaintiff contends that Defendants' decision not to move to dismiss Plaintiff's fraud claim constitutes an implicit acceptance that Plaintiffs adequately plead fraud, which in turn compels the survival of Plaintiff's Unfair and Deceptive Trade Practices claim under the theory that proof of fraud necessarily constitutes a UDTP violation. Plaintiff cites *Powell v. Wold* and *Webb v. Triad Appraisal* in support of this proposition. This argument fails for two independent reasons.

First, *Powell v. Wold* and *Webb v. Triad Appraisal* do not apply in this case. The triggering condition in both these cases is a judicial determination that the fraud claim survives, not a defendant's decision about whether to move to dismiss a fraud claim. "Because the claims of the plaintiff based on fraud and negligent misrepresentation have been held by this Court to be

sustainable past a Rule 12(b)(6) motion to dismiss, the claim of unfair and deceptive trade practices cannot be dismissed. Proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive trade practices." Unlike the present case, in both *Powell* and *Webb*, a court had assessed the fraud allegations and found them sufficient to survive a motion to dismiss. *See Powell v. Wold*, 88 N.C. App. 61, 68, 362 S.E.2d 796, 800 (1987) and *Webb v. Triad Appraisal*, 84 N.C. App. 446, 449, 352 S.E. 2d 859, 862 (1987). The Court has not done so in this case. Defendants' decision not to challenge Plaintiff's fraud claim merely reflects a strategic choice. It does not supply the judicial determination required. Under Plaintiff's logic, any defendant filing a targeted partial motion to dismiss would be deemed to have conceded the sufficiency of every unchallenged claim, a result no court has endorsed and *Powell* and *Webb* do not support.

Additionally, Plaintiff's reliance on *Hardy v. Toler* is misplaced. *Hardy* does not address pleading standards, Rule 12(b)(6), or any purported "admission" arising from a party's failure to move to dismiss a fraud claim. *See Hardy v. Toler,* 288 N.C. 303, 218 S.E.2d 342 (1975). Instead, *Hardy* merely recognizes that although proof of fraud may support a UDTP claim, the converse is not true, and whether conduct constitutes an unfair or deceptive trade practice is a legal determination for the Court. *Hardy*, 288 N.C. at 309, 218 S.E.2d at 346. Thus, Defendants' decision not to move to dismiss Plaintiff's fraud claim does not establish that Plaintiff has adequately plead a UDTP claim, nor does it relieve Plaintiff of its burden to plead a UDTP claim with the requisite legal sufficiency.

Second, and more fundamentally, even if the limited overlap principle from *Powell*, *Webb*, and *Hardy* applied here, it would not save Plaintiff's UDTP claim. At most, North Carolina law recognizes that proof of fraud can satisfy the "unfair or deceptive act" element of a UDTP claim. *See*, e.g., *Hardy*, 288 N.C. at 309, 218 S.E.2d at 346. That principle, however, does not satisfy

every element of a claim for Unfair and Deceptive Trade Practices. A UDTP claim includes an independent requirement that fraud does not, specifically, that the challenged conduct occur "in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). A sufficiently plead fraud claim may establish an unfair or deceptive *act*, but it says nothing about whether that act was in or affecting commerce.

Plaintiff's argument improperly collapses these distinct elements, and in doing so attempts to relieve itself of the obligation of satisfying the commerce element. As Defendants explained in their opening brief, the allegations in the present case concern the internal operations of a single business and therefore fall outside the scope of "commerce," regardless of whether those same allegations might state a claim for fraud.

### B. Alleged downstream effects on consumers do not transform internal business conduct into activity "in or affecting commerce."

Plaintiff argues that Ms. Ray's alleged misrepresentations about the Cytopeel were "in or affecting commerce" because allegedly defective devices ultimately reached consumers who complained to Emage. (Pl.'s Opp. at 10.) Any impact on consumers, however, was merely incidental to conduct that took place solely within the business relationship between Ms. Ray and Emage. The conduct directed at the marketplace was Emage's. Ms. Ray's alleged misrepresentations were made exclusively to Mr. Wallace within an internal business relationship and thus were not in or affecting commerce.

In *Chisum v. Campagna*, the North Carolina Business Court rejected the argument that diversion of assets to third-party LLCs satisfied the commerce requirement of a UDTP claim because "any impact the conduct had on other 'market participants' was incidental to the alleged unfair conduct that took place solely within" the business entity. *Chisum v. Campagna*, 2017 NCBC LEXIS 102, *36, 2017 NCBC 100, 2017 WL 5161978. The same is true here. Ms. Ray's

Case 3:26-cv-00157-MEO-DCK    Document 15    Filed 04/24/26    Page 7 of 10

alleged misrepresentations were made internally to Mr. Wallace. Plaintiff's claim that allegedly defective products reached consumers as a downstream consequence of the alleged internal conduct at issue does not transform that alleged internal conduct into a commercial transaction between separate market participants sufficient to satisfy the commerce requirement of a UDTP claim. Just as the diversion of assets in *Chisum* did not constitute an act "in or affecting commerce" simply because third parties were eventually affected, Ms. Ray's alleged internal misrepresentations do not constitute acts "in or affecting commerce" simply because consumers downstream allegedly complained about the products they received.

Accordingly, Plaintiff's reliance on downstream consumer effects to meet the commerce element of its claim for Unfair and Deceptive Trade Practices fails as a matter of law, and its UDTP claim should be dismissed for failure to state a claim.

### Conclusion

For the foregoing reasons, Plaintiff's Opposition fails to cure the deficiencies in its claim for Breach of Contract as it relates to the restrictive covenants in the Second Ray ICA and in its claim for Unfair and Deceptive Trade Practices. Therefore, Defendants respectfully request the Court dismiss both these claims.

This, the 24th day of April, 2026

**HULL & CHANDLER**

By:    */s/ Elizabeth Vennum*
        Elizabeth Vennum
        N.C. State Bar No. 49747
        Counsel for Defendant
        Hull & Chandler
        1009 East Boulevard
        Charlotte, NC 28203
        Tel. (704) 375-8488
        Fax (704) 375-8487
        lvennum@lawyercarolina.com
        *Counsel for Defendants*

## <u>Certificate of Service</u>

This is to certify that on this date the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to CM/ECF participants, and that the undersigned will serve counsel not registered with CM/ECF by e-mail as follows:

> Jordan LaTorre
> David Redding
> 2901 Providence Road, Suite 303
> Charlotte, North Carolina 28211
> (704) 900-2215
> jlatorre@tlg-law.com
> dredding@tlg-law.com
> *Counsel for Plaintiff*

This, the 24th day of April, 2026

### HULL & CHANDLER

> By:     */s/ Elizabeth Vennum*
> Elizabeth Vennum
> N.C. State Bar No. 49747
> Counsel for Defendant
> Hull & Chandler
> 1009 East Boulevard
> Charlotte, NC 28203
> Tel. (704) 375-8488
> Fax (704) 375-8487
> lvennum@lawyercarolina.com